# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DEAN ANDERSEN,<br><br>                Plaintiff,<br><br>v.<br><br>HARRIS & HARRIS, LTD.,<br><br>              Defendant. | CIVIL NO.: 2:13-cv-867-PJG<br><br>**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This case is not about whether Plaintiff owes a debt. This case is not about whether Defendant may attempt to collect a debt from Plaintiff. This case does not implicate Plaintiff's prior appearances in either state or federal court. This case is about the Telephone Consumer Protection Act ("TCPA") which imposes strict liability on certain prohibited uses of Automated Telephone Dialing Systems (ATDS) and prerecorded/artificial voice technologies. The TCPA prohibits the use of such automated technologies to place calls to cellular telephones except in two instances. The first, an emergency purpose, is not at issue here. The second exception is for calls made with the Prior Express Consent of the called party. Invocation of that affirmative defense carries a burden of proof. If the burden of proof is not met, the defense fails and liability attaches.

Defendant's motion for summary judgment fails. The record establishes that Defendant called Plaintiff's cell phone. The record establishes Defendant did so using an

1

ATDS and that Defendant left prerecorded/artificial voice messages. Defendant has not established Prior Express Consent. Those facts demonstrate a violation of the TCPA for which liability attaches.

Despite Defendant's assertions, the record does not establish that Defendant has Prior Express Consent that shields Defendant from liability. Defendant attempts to use inadmissible, self-serving hearsay to prove Prior Express Consent. Hearsay is inadmissible for purposes of summary judgment. Additionally, the hearsay violates the best evidence rule. The hearsay is also directly contradicted by other portions of the record. Consequently, Defendant has not dispelled all genuine issues of material fact so as to deserve summary judgment in its favor. What's more, Defendant has engaged in efforts to prejudice this Court against Plaintiff by introducing irrelevant exhibits when the only question Defendant was required to answer with admissible evidence was the question of whether or not Plaintiff provided his cell phone number to Defendant. Defendant has failed, rendering summary judgment in favor of Defendant improper.

Plaintiff requests an Order for summary judgment in his favor. Plaintiff has demonstrated his claim. Defendant has not proven its defense to the claim. The TCPA is a strict liability statute. It is therefore proper to find that no genuine issue of material fact exists and that summary judgment in favor of the Plaintiff should be awarded.

<u>**ARGUMENT**</u>

**I.      Plaintiff Has Standing To Bring This Claim.**

**a.  Plaintiff Satisfies the Requirements of Article III Standing.**

Defendant argued to the Court that Plaintiff has no injury in fact – and therefore lacks standing – because no actual damages have been alleged. Court Doc. 49, Defendant's Memorandum ("Def. Memo") 19-21. Defendant is incorrect: it is a long-standing and well-settled matter of law that Congress has the authority to create new legal rights, the invasion of which creates standing, even though no injury would exist without the statute.[1] Plaintiff seeks to enforce the legal rights conferred by the TCPA and seeks the statutory damages authorized by the TCPA. Plaintiff therefore has standing.

The requirements for standing under Article III are: (1) an injury in fact; (2) causality; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The only requirement with which Defendant takes issue in this case is that Plaintiff must suffer an injury in fact. An "injury in fact" consists of "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted). Congress may "define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." *Vt. Agency of Nat. Res. v. United States*, 529 U.S. 765, 773, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000).[2] **"A plaintiff need not demonstrate that he or she suffered actual monetary**

---

[1] See Fed R

[2] *See e.g. Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (The

3

damages because 'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009) (*quoting Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (emphasis added).[3] Indeed, **"[c]ourts have repeatedly held that the availability of statutory damages for the violation of a statutory right satisfies Article III's injury-in-fact requirement, even when no actual damages were incurred**." *Reed v. Chase Home Fin., LLC*, 893 F. Supp. 2d 1250 (S.D. Ala. 2012) (emphasis added).[4] Consequently, the fact that Plaintiff does not seek actual damages is irrelevant. Defendant concedes that Plaintiff's complaint seeks statutory damages authorized by the TCPA. Court Doc. 49,

---

"actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."); *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (U.S. 1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.").

[3] *See e.g. Federal Election Commission v. Akins*, 524 U.S. 11, 20-21, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (**finding that The Federal Election Campaign Act of 1971 gave the plaintiffs a right to information, and the infringement of that right constituted injury in fact**); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209-11, 93 S. Ct. 364, 34 L. Ed. 2d 415 (1972) (**finding that The Civil Rights Act of 1968 created a legally protected interest in ensuring fair housing sufficient to confer standing to two white residents of an apartment complex to challenge the owner's discrimination against black applications**).

[4] *See e.g. Alston v. Countrywide Financial Corp.*, 585 F.3d 753, 762-63 (3rd Cir. 2009) (Real Estate Settlement Procedures Act); *Beaudry v. TeleCheck Services, Inc*., 579 F.3d 702, 707 (6th Cir. 2009) (Fair Credit Reporting Act); *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 622 (7th Cir. 2007) (Fair Credit Reporting Act); *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007) (Fair Debt Collection Practices Act); *Robey v. Shapiro, Marianos & Cejda, L.L.C.,* 434 F.3d 1208, 1212 (10th Cir. 2006) (Fair Debt Collection Practices Act); *DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) (Truth in Lending Act); *Mabary v. Hometown Bank, N.A.*, 888 F. Supp. 2d 857, 2012 U.S. Dist. LEXIS 124375, 2012 WL 3765020 at *3 (S.D. Tex. 2012) (Electronic Funds Transfer Act); *Hammer v. JP's Southwestern Foods, L.L.C.*, 739 F. Supp. 2d 1155, 1161-62 (W.D. Mo. 2010) (Fair and Accurate Credit Transactions Act); *Landsman & Funk, P.C. v. Lorman Business Center, Inc.*, 2009 U.S. Dist. LEXIS 18114, 2009 WL 602019 at *3 (W.D. Wis. 2009) (Telephone Consumer Protection Act).

4

Defendant's Memo 19 (citing Court Doc. 1, Complaint). Plaintiff therefore has standing to bring this claim.

### b. Defendant Misread the *Raines* and *Valley Forge* Decisions.

Defendant's analysis of Article III standing is wrong: statutory damages satisfy the injury in fact threshold. Indeed, Defendant blatantly misreads the *Raines* and *Valley Forge* decisions. Defendant relied on footnotes from those two cases for the argument that standing does not exist merely because a statute provides a cause of action. Court Doc. 49, Def. Memo 20. The footnotes used by Defendant cite to *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 60 L. Ed. 2d 66, 99 S. Ct. 1601 (1979) for the proposition that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Gladstone,* 441 U.S. at 100. *Compare Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) *with Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc*., 454 U.S. 464, 487 n.24 (1982). The Court in *Gladstone* wrote:

> ***Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one "who otherwise would be barred by prudential standing rules." Warth v. Seldin, 422 U.S., at 501.*** In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered "a distinct and palpable injury to himself," ibid., that is likely to be redressed if the requested relief is granted. Simon v. Eastern Kentucky Welfare Rights Org., supra, at 38.

*Gladstone*, 441 U.S. at 99-100 (emphasis added). *Warth v. Seldin*, in turn, notes that:

5

> *Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules. Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.* E.g., United States v. SCRAP, 412 U.S. 669 (1973).

*Warth v. Seldin*, 422 U.S. 490, 501 (U.S. 1975). In other words, both *Raines* and *Valley Forge* agree that an injury in fact exists where, as here, **Congress has granted an express right of action**. Indeed, the 7th Circuit Court of Appeals as well as other Federal Appellate Courts have ruled that statutory damages constitute an injury in fact.[5] *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (Finding Article III standing established by virtue of statute creating legal rights.); *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 988 (6th Cir. 2009) (Same); *Beaudry v. TeleCheck Servs.*, 579 F.3d 702, 705-07 (6th Cir. 2009) (Same); *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 622 (7th Cir. 2007) (Same). Plaintiff has standing.

## II. Defendant's Evidence for Possession of Prior Express Consent is Fatally Flawed.

### a. Hearsay is Inadmissible in Summary Judgment Proceedings.

Courts may strike materials submitted by the parties when those materials fail to satisfy the standards imposed by the Federal Rules of Evidence. *See, e.g., Holbrook v. Norfolk Southern Railway Co.*, 414 F.3d 739, 745–46 (7th Cir. 2005) (affirming the

---

[5] Nonetheless, Defendant certified to the Court that it was presenting an argument warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed.R.Civ.P. 11(b)(2). In effect, Defendant's argument asks the Court to rule against both its own Appellate Circuit and the Supreme Court of the United States but provided no warrant for such a ruling.

6

districts court's order striking evidence that failed to meet the relevancy standard under Federal Rule of Evidence 401); *Dye v. United States*, 360 F.3d 744, 750 (7th Cir. 2004) (holding testimony regarding the contents of documents was inadmissible because the documents were not produced); *Dugan v. R.J. Corman Railroad Co*., 344 F.3d 662, 669 (7th Cir. 2003) (holding affidavit testimony could be stricken as unreliable because an original agreement was not attached to the affidavit).

Federal Rule of Evidence 602 requires a showing of sufficient evidence that testimony is based on one's own personal knowledge in order for that testimony to be admissible. Fed.R.Ev. 602. The mere assertion of personal knowledge does not satisfy the personal knowledge threshold of Federal Rule of Evidence 602; a showing of actual personal knowledge is required. *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997) (Finding an affidavit is inadmissible if "the witness could not have actually perceived or observed that which he testifies to.") (Citations omitted). Evidence not based on personal knowledge is hearsay. Fed.R.Ev. 801(c) (Hearsay is "a statement other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."). Hearsay is inadmissible evidence that may not be used in summary judgment proceedings. *See Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002); *Eisenstadt v. Centel Corp*., 113 F.3d 738, 742 (7th Cir. 1997).

### b.  The Affidavit of Tim Brown is Inadmissible Hearsay.

Every purported fact used by Defendant to establish Prior Express Consent relies on hearsay that is inadmissible in summary judgment proceedings. *See* Court Doc. 49, Def. Memo 3-7. Defendant's exclusive evidentiary source for establishing the affirmative

7

defense of Prior Express Consent is Court Doc. 47-1, Affidavit of Tim Brown ("Brown Affidavit).[6] The Brown Affidavit does not lay proper foundation to support finding that he has personal knowledge of the facts contained in the Brown Affidavit. Additionally, the Brown Affidavit violates the best evidence rule as it fails to provide the Court with an opportunity to review the document from which Mr. Brown claims to derive his knowledge and offers no explanation for the document's absence. What's more, the record directly contradicts statements contained in the Brown Affidavit. These defects make it proper for this Court to disregard the Brown Affidavit. Plaintiff respectfully requests the Court strike the Brown Affidavit from the record and grant summary judgment in favor of Plaintiff as Defendant has failed to raise a genuine issue of material fact.

### i. The Affidavit of Tim Brown Does Not Lay Proper Foundation to Establish Personal Knowledge.

The Brown Affidavit does not lay proper foundation to support finding that he has personal knowledge of the facts he recites. First, The Brown Affidavit fails to establish Mr. Brown's credentials to provide any of the information contained in his affidavit.[7] Mr. Brown fails to identify the scope of his authority at We Energies. *Id.* Mr. Brown does not

---

[6] Plaintiff already addressed the deficiencies of Aryeh Derman's Deposition as a source of admissible evidence supporting the possession of Prior Express Consent and incorporates that analysis by reference. *See* Court Doc. 43.

[7] Indeed, not even Defendant's January 30, 2014 email identifies the credentials of Tim Brown or how long he has worked at We Energies. Court Doc. 49-1. Defendant provided this email in an attempt to show that it satisfied Plaintiff's Interrogatory No. 16 which requested the name, position, contact information, "*and a detailed summary of the expected testimony of each such person.*" *See* Court Doc. 44, Vavreck Decl., ¶ 2, Ex. 5, Defendant's Answers to Plaintiff's Discovery Requests 9-10; *see also Id.*, Exs. 6-8.

8

describe his responsibilities as an employee of We Energies. *Id*. Mr. Brown does not identify how long he has been employed by We Energies. *Id*., ¶ 2 ("I am **currently** employed as the Operations Manager. . . ."). Mr. Brown does not indicate whether he was even employed at We Energies at any time during which Plaintiff had an account with We Energies. *Id*. While Mr. Brown claims to be familiar with the record keeping systems of We Energies, he does not indicate whether the systems with which he is familiar were in place at the time that Plaintiff had an account with We Energies or at the time Plaintiff purportedly provided his cell phone number to Defendant. *Id*., ¶ 4.

*At no point does Mr. Brown claim to have any personal involvement of any type in any event relevant to Plaintiff's claim.* Mr. Brown is consequently unable to make statements regarding the circumstances under which We Energies changes customer contact information (paragraphs 7, 17-19). Mr. Brown is additionally unable to make statements regarding the history of Plaintiff's accounts with We Energies (paragraph 5, 6, 8-16, 20, and 22) because there is no indication that Mr. Brown was employed by We Energies during the relevant time period, let alone involved in any of those events. Consequently, there is no assurance that Mr. Brown's descriptions of how account notes are filled in and updated bear any relationship to what actually happened. For these reasons, Plaintiff respectfully requests the court strike the Brown Affidavit. *Sinclair*, 109 F.3d at 1536 (Finding an affidavit is inadmissible if "the witness could not have actually perceived or observed that which he testifies to.") Personal knowledge has not been established. Hearsay is inadmissible. The Brown Affidavit therefore fails to contain admissible, relevant evidence. Fed.R.Ev. 401.

9

### ii. The Affidavit of Tim Brown Violates the Best Evidence Rule and Therefore Contains Inadmissible Hearsay.

The "best evidence rule" refers to Federal Rule of Evidence 1002, which states that "an original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed.R.Ev. 1002. "The purpose of the best evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing." *United States v. Ross*, 33 F.3d 1507, 1513 (11th Cir. 1994). "If testimony attempts to prove the contents of the document, such testimony is not admissible unless the original document is provided." *Marceau v. Dep't of Ins.*, 2011 U.S. Dist. LEXIS 87076, *18 (D. Idaho Aug. 5, 2011). This is because such testimony constitutes hearsay. *Boyce*, 314 F.3d at 889. "Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible at trial." *Id.* (quoting *Eisenstadt*, 113 F.3d at 742. "Where the [best evidence] rule applies, the proponent [of the evidence] must produce the original (or a duplicate, see Fed.R.Evid. 1003) or explain its absence." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004). If the best evidence rule is not met, and not supported with an exception, then the evidence may be stricken from the record. *Dugan*, 344 F.3d 662, 669 (7th Cir. 2003) (holding affidavit testimony could be stricken as unreliable because an original agreement was not attached to the affidavit).

The Brown Affidavit attempts to prove the contents of a document which is not provided – the notes maintained by We Energies. Mr. Brown does not claim to have created Plaintiff's account records. *See* Court Doc. 47-1, Brown Aff., ¶ 3 ("These records

10

are made by, or from information transmitted by, a person with knowledge of the events described therein. . . ."). Mr. Brown does not explain why the notes were not provided. *See generally Id.* Consequently, the Affidavit contains inadmissible hearsay evidence which cannot be used to defeat a motion for summary judgment. The best evidence rule has been violated. Hearsay is inadmissible. The Affidavit therefore fails to contain admissible, relevant evidence. Fed.R.Ev. 401. Consequently, Defendant has not demonstrated the affirmative defense of Prior Express Consent. Plaintiff respectfully requests that the Court strike the Brown Affidavit to the extent it attempts to prove the contents of the notes associated with Plaintiff's account. As a matter of law, Plaintiff is entitled to Summary Judgment in his favor.

### iii. The Record Directly Contradicts Statements Contained in the Brown Affidavit.

The failure to lay proper foundation or abide the best evidence rule leaves both the relevance and the veracity of Mr. Brown's statements in question. Indeed, two that are critical to Defendant's affirmative defense are disputed if not wholly contradicted by the record. As explained in Section III., *infra*, Defendant must prove it received (1) Plaintiff's cell phone number (2) with respect to the specific account for which Defendant seeks to use and ATDS and/or prerecorded voice technologies. Defendant has not established those facts.

First, Paragraphs 18 and 19 of the Brown Affidavit are specifically contradicted by an employee of We Energies who spoke with Mr. Andersen and **admitted that We Energies has and uses a call capture system**. Court Doc. 44, Vavreck Decl., ¶ 2, Ex. 9

11

Recordings of Eight Telephone Communications Between Dean Andersen and Harris & Harris 8:3-9:6; *see also Id.*, Ex. 10 Compact Disc with Recordings.[8] According to the We Energies employee, call capture systems are used by We Energies. As explained in Section III., *infra*, Prior Express Consent cannot be established through the use of a call capture system. Consequently, Defendant has not demonstrated the affirmative defense of Prior Express Consent. As a matter of law, Plaintiff is entitled to Summary Judgment in his favor.

Second, paragraph 5 of the Brown Affidavit asserts that Plaintiff has one account, assigned a unique identification number ending in 4455. This averment is called into question, if not directly contradicted, by a document Defendant produced at Plaintiff's deposition which purports to be a We Energies utility bill. Court Doc. 44, Vavreck Decl., ¶ 2, Ex. 4 Deposition of Dean Andersen, Defendant Exhibit 11, "We Energies Bill". The purported utility bill is addressed to Plaintiff at 505 Lake Street and appears to be "for electric service used at: 505 Lake Street Lowr" *with an account number ending in 3440*, as well as "for electric service used at: 505 Lake Street *with an account number ending in 1135*. *Id.* There is no identification number on the document ending in 4455. *Id.* Furthermore, Defendant's collection notes indicate they are collecting on four (4) We

---

[8] While Plaintiff acknowledges that he is not able to verify the truth of the statements asserted by the We Energies employee he spoke to, Defendant has raised no objection to the introduction of this exhibit and therefore – if only tacitly – has endorsed its accuracy. Furthermore, the statement is admissible pursuant to Fed.R.Ev. 801(d)(2).

Energies accounts ending in 0770; *1135*; 5803; and 7704. Court Doc. 52, Second Vavreck Decl., ¶2, Ex. 1.

While an identifying number ending 4455 may indeed be associated with Plaintiff in some capacity, it is unclear whether it is an account number. As explained in Section III., *infra*, Prior Express Consent only attaches to the single account for which it is given. Prior Express Consent cannot be extended to other accounts. Further, the record disputes Plaintiff only ever had a single account with We Energies ending 4455 for services received at 505 Lake Street. The Brown Affidavit should be stricken from the record.

### c. Defendant's Prior Express Consent Evidence is Flawed and Internally Inconsistent.

Plaintiff reminds the Court that, according to Defendant's analysis, Plaintiff first opened an account with We Energies in 2003. Court Doc 49, Def. Memo 3. Plaintiff did not live at the 505 Lake Street address until sometime between 2005 and 2010. Court Doc. 44, Vavreck Decl., ¶ 2, Ex. 4 Deposition of Dean Andersen ("Andersen Depo.") 9:18-24; 10:3-17. According to Defendant, Plaintiff first began receiving services from We Energies for the 505 Lake Street Address "in late 2008."[9] Court Doc. 49, Defendant's Memo 5 n.1. Furthermore, according to the Brown Affidavit, Plaintiff's cell phone number first appears "on the Account on May 7, 2008." Early May is certainly not part of "late 2008."

---

[9] Plaintiff makes two observations. First, the account notes are not in the record. Consequently, there is no source for the facts cited in Defendant's footnote. Second, the characterization "in late 2008" is a vague identification of when utility services began considering the source is purportedly account notes Defendant created and updated throughout the period Plaintiff received services. This is particularly relevant considering the accuracy with which Defendant claims to know when Plaintiff's cell phone number appears in the unproduced account notes.

13

Taken together, there is far more than a scintilla of doubt regarding whether Plaintiff had one account or multiple accounts at multiple addresses. Under Defendant's rendition of the facts, Plaintiff opened an account for services at 505 Lake Street five (5) years before he ever began receiving service at 505 Lake Street. Plaintiff submits that, as the record supports, Plaintiff has held more than one account with We Energies. *Compare* Court Doc. 44, Vavreck Decl., ¶ 2, Ex. 4, Andersen Depo. at 74:15-17 ("I believe [Defendant] was collecting on **accounts** that were only open for one month.") *with Id.*, Ex. 4 Andersen Depo., Defendant Exhibit 11, "We Energies Bill" *and* Court Doc. 52, Second Vavreck Decl., ¶2, Ex. 1. Indeed, Plaintiff had an account with We Energies while living at an address in Appleton:

> Q: When is the first time you ever spoke to WE Energies or had occasion to or had any interaction with them?
>
> A: Probably at the 4816 South Apple Road address in Appleton.

*Id.*, at 44:14-18. Additionally, the record indicates a period of time when the 505 Lake Street accounts were not Plaintiff's responsibility:

> Q: So for the first year that you lived at 505 Lake, WE Energies was sending bills to whom?
>
> A: The landlord.
>
> ****
>
> Q: Why was the WE Energies services for the 505 Lake Street transferred into your name?
>
> A: The landlord called WE Energies and had them put the utility bills into my name.

14

Q: How do you know that he did that?

A: Because he told me he was going to do that, and then I started receiving bills from WE Energies instead of paying [the landlord] for the energy bills.

*Id.*, at 37:12-40:13. In sum, there are serious questions about the accuracy with which Defendant portrays the facts of this matter. The more reasonable interpretation of the facts is that Plaintiff has had multiple accounts, not a single account that was opened five years before Plaintiff ever began receiving service. As explained in the following section, that fact is of particular significance to Defendant's burden of proof with respect to the affirmative defense of Prior Express Consent.

**III. Defendant's Prior Express Consent Analysis is Flawed as a Matter of Law.**

   **a. The FCC has Ruled that Prior Express Consent Attaches to Specific Accounts, Not to the Creditors of those Accounts.**

Notwithstanding that Defendant lacks admissible factual evidence to support the contention that Plaintiff ever actually gave Prior Express Consent, Defendant is incorrect to assert that so long as Plaintiff gave his cell phone number to We Energies at some point in time, the context under which the number was provided is irrelevant. This argument has been foreclosed by the FCC. The FCC has specifically ruled that Prior Express Consent only attaches to the ***individual account for which the consent is given and cannot be extended to other accounts.*** The FCC wrote:

   We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided

15

> during the transaction that resulted in ***the debt*** owed.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 565 (Jan. 4, 2008) ("2008 FCC Order"). In other words, "[p]ursuant to the FCC ruling, prior express consent is consent to call ***a particular telephone number*** in connection with ***a particular debt*** that is given before the call in question is placed." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. Cal. 2012) ( *citing* 2008 FCC Order, 23 FCCR at 565). *Meyer*'s reading of the 2008 FCC Order is further bolstered by the 2008 FCC Order's additional restriction on the use of consent: "prior express consent provided ***to a particular creditor will not entitle that creditor (or third party collector) to call a consumer's wireless number*** on behalf of other creditors, ***including on behalf of affiliated entities***." 2008 FCC Order, 23 FCCR at 565 n.38 (emphasis added). There is simply no scenario under which Prior Express Consent received by a can be extended from one account to another account: Prior Express Consent must be received for each account individually.

Consider the scenario in which "Consumer" has both a business cell phone and a personal cell phone. The business phone is paid for by "Employer" who has a strict policy that the business phone may only be used for business purposes. Consumer also has three (3) credit accounts with "Creditor:" a business credit account, a personal credit account, and a second credit account on which the consumer's child, "Student" (who is away at college), is an authorized user. Under Defendant's theory, if Consumer provides the business cell phone number with respect to the business credit account, Creditor

16

would be permitted to use an ATDS to call the business cell phone with respect to any of the three credit accounts.[10] Consumer- through no fault of his own- would come under fire with Employer. Indeed, if Student's cell phone number were included on the second credit account, Creditor could call Student's cell phone with respect to the business account. Student could conceivably authorize changes to the business account under the mistaken belief that the call regarded the account Student was actually authorized to use.

Rather than adopt Defendant's preferred interpretation of the TCPA, which has no support in law, this Court should align with *Meyer's* straightforward application of the 2008 FCC Order and conclude that consent attaches to the single account for which it is given. It is Defendant's burden to prove it has consent for the account(s) it seeks to collect on by using an ATDS. Defendant has not met the burden of proof for its affirmative defense until and unless Defendant presents sufficient evidence to dispel any genuine issue of material fact regarding whether Defendant had Plaintiff's Prior Express Consent with respect to the account(s) involved in Defendant's ATDS dunning campaign. Defendant has no such proof and therefore summary judgment in favor of Defendant is not warranted.

---

[10] There are still further headaches to be had if a scenario like that which occurred in *Breslow* (*see* Section III.d.) occurred. If Consumer's business phone was reassigned to another employee, "New User," and fell behind on payments, New User might start receiving debt collection calls regarding Consumer's personal credit accounts, the caller would find itself potentially exposed to claims under the Fair Debt Collection Practices Act. Alternatively, if New User released the business number with respect to her accounts, Student might conceivably receive calls regarding the New User's accounts.

17

### b. Defendant Is Incorrect to Assert that Consent is Irrevocable as a Matter of Law.

Defendant argues that consent is irrevocable as a matter of law. See Court Doc. 49, Def Memo 15-18. Defendant is incorrect. First, there is no prohibition on revoking consent in the TCPA. 47 U.S.C. 227 et seq. The concept of consent is a well-known tenet of law. "[W]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Neder v. United States*, 527 U.S. 1, 21, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). Second, **the FCC has clarified that consent under the TCPA is revocable.** *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15398 (Nov. 26, 2012) ("2012 FCC Order") ("[R]equests to stop receiving voice calls . . . can be confirmed during the same call in which a consumer has expressed a desire to opt out."); *See also Gager v. Dell Financial Services, LLC,* 727 F.3d 265 (3d Cir. 2013) (the [2012 FCC Order] demonstrates that the FCC endorses two important points: (1) a consumer may revoke her informed consent once it has been given, . . . and (2) there is no temporal limitation on when a consumer may revoke her prior express consent[.]"). Third, as Defendant concedes, "there is a line of cases . . . holding that . . . a debtor can revoke consent[.]" Court Doc. 49, Def Memo 16. These cases were provided to the Court in Plaintiff's original brief.[11] Subsequent to the filing of Plaintiff's original brief, the Eleventh Circuit

---

[11] *See* Court Doc. 43 (*citing Himes v. Client Servs. Inc.,* 2014 DNH 2 (D.N.H. 2014); *Gager,* 727 F.3d 265; *Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 977 (W.D. Wis. 2013); *Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744, 749 (W.D. Tex. 2011)).

18

Court of Appeals reaffirmed that consent was revocable. *Osorio v. State Farm Bank, F.S.B.*, 2014 U.S. App. LEXIS 5709, 28-29 (11th Cir. Fla. Mar. 28, 2014) ("Congress intended for the TCPA to incorporate the common-law meaning of consent, including its revocation."). Consent is revocable. If the Court concludes Prior Express Consent was granted, fact questions remain as to whether that consent was revoked.

### c. Defendant Is Incorrect to Assert that The FDCPA Governs any Right to Revoke Consent.

Defendant is additionally incorrect to argue that "[e]ven if the Court decides that a right to revoke consent exists, the standard to revoke consent cannot be less than the written requirement required by the FDCPA." Court Doc. 49, Def Memo 17. Defendant is incorrect. Defendant cites to *Kenny v. Mercantile Adjustment Bureau, LLC*, 2013 U.S. Dist. LEXIS 62415, 2013 WL 1855782 (W.D.N.Y. May 1, 2013) for this proposition. Defendant misapplies *Kenny,* which states:

> ***This district repeatedly has held that, where a plaintiff alleges violations of both the FDCPA and TCPA, the facts of the case and whether the calls were made for the purpose of debt collection or telemarketing determine which statute applies for purposes of revoking prior express consent.*** See, e.g., Moltz v. Firstsource Advantage, LLC, No. 08-CV-239, 2011 U.S. Dist. LEXIS 85196, 2011 WL 3360010, at *5-6 (W.D.N.Y. Sept. 15, 2011) (citing Starkey v. Firstsource Advantage, L.L.C., No. 07-CV-662, 2010 U.S. Dist. LEXIS 60955, 2010 WL 2541756, at *6 (W.D.N.Y. Mar. 11, 2010)).

*Kenny*, 2013 U.S. Dist. LEXIS at *18. The *Kenny* standard Defendant advocates only applies where a Plaintiff raises claims under **both** the FDCPA and the TCPA. Plaintiff's

Case 2:13-cv-00867-JPS   Filed 04/07/14   Page 19 of 29   Document 54

complaint does not raise a claim under the FDCPA. *Kenny* is inapposite.[12]

### d. Defendant Improperly Characterizes the *Breslow* Decision.

Defendant argues that Plaintiff misused *Breslow* by arguing that it endorses the contention that intermittent live calls are necessary for verifying that a caller has not lost consent to use an ATDS or prerecorded/artificial voice. Defendant is incorrect. *Breslow* dealt with a situation in which a defendant ("Caller") used an ATDS to place calls to a telephone number that had been reassigned from one subscriber ("Former Customer") to different subscriber ("Current Customer"). The court found that the "Former Customer provided the Cell Number to [the Caller]. . . . Had Former Customer kept the Cell Number and [the Caller's] automated calls actually reached Former Customer, the provision of the Cell Number . . . would certainly constitute 'prior express consent' as defined by the FCC." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012). The defendant, Caller, argued that the consent received from Former Customer shielded Caller from TCPA liability with respect to the Current Customer because the Former Customer was the "intended recipient" of the calls. *Id.* Conversely, the plaintiff, Current Customer, argued "that the prior express consent must come from the actual recipient of the calls." *Id.* The court concluded that the single issue confronting it was whether the TCPA's language "called party" referred to "the intended recipient, or the actual recipient[.]" *Id.* Ultimately, *Breslow* held "that the 'called party' for the

---

[12] Furthermore, *Kenny* relies on the *Starkey* decision. *Osorio* rejected the *Starkey* ruling because "[*Starkey*] conflates apples and oranges. The FDCPA, on which [*Starkey*] relied, is a separate statute with an independent cause of action for violations." *Osorio*, 2014 U.S. App. LEXIS at *28.

purposes of [the TCPA] was not Former Customer, but the [Current Customer]." *Id.* at 22.

In reaching this conclusion, *Breslow* acknowledged that while "allowing 'incidental' recipients to sue might result in potentially endless liability based on who answers the phone, to hold otherwise might allow a defendant who obtained the prior express consent of a previous owner of a cellular phone number to forever escape liability for placing automated calls to subsequent owners of the same number." *Id.* Acknowledging these "conversely detrimental scenarios[,]" *Breslow* continues:

> **The Court must assign one of these parties the cost of correcting the error that gave rise to this dispute.** If a 'called party' with respect to § 227(b)(1)(A)(iii) is the intended recipient, the moral of the story is that consumers who acquire new cellular phone numbers and wish to avoid unwanted calls bear the responsibility of determining whether or not a prior owner of the number ever gave consent to any lending institutions to be called. **If the 'called party' is the actual recipient, the moral is that companies who make automated calls bear the responsibility of regularly checking the accuracy of their account records or placing intermittent live verification calls. Viewed from this perspective, it seems to the Court that entities like [the Caller] – which already keep records of accounts and phone numbers—are in a much better position to bear this responsibility than are individuals like [Current Customer].** The Plaintiffs' interpretation is more reasonable to this Court and others, absent an indication from Congress or the FCC to the contrary.

*Id.* at 22. Defendant is simply incorrect to argue that *Breslow* does not stand for the

proposition that the user of an ATDS has an on-going obligation to ensure it can continue to use the ATDS.

The fact that *Breslow* assigned a burden to Caller in the context of resolving the definition of the term "called party" does not diminish its relevance to this Court's consideration of whether oral revocation of consent can be accomplished through an outgoing voicemail. If Caller bears the burden of verifying whether a number has been reassigned, Plaintiff submits that Defendant should bear the burden of verifying whether it has Prior Express Consent rather than presuming possession or relying on unsubstantiated assurances from We Energies. To be clear, Plainitff does not advocate that Defendant has a burden to periodically ask "Do I still have your consent to use an ATDS?" Rather, Plaintiff argues- as endorsed in *Breslow*- that Defendant has the burden to verify the accuracy of its records which includes periodic efforts to confirm information such as whether a telephone number has been reassigned or consent has been revoked.

## IV. Defendant is Incorrect to Argue that Plaintiff's Evidence Must be Presented to a Trier of Fact as No Genuine Issue of Fact Remains.

### a. Defendant's Argument Against Liability Assignment has No Merit.

Section III.D. of Defendant's memo argues that Plaintiff's summary judgment motion "seeks to recover for a disputed number of calls, which in the event of a finding of liability, this Court cannot resolve that dispute." Court Doc. 49, Def Memo 21. Defendant is incorrect: the Court has an adequate record before it from which to assign liability. The Court has Plaintiff's complaint which alleges with specificity six (6)

22

telephone calls and six (6) voicemails that violate the TCPA. Court Doc. 1, Complaint ¶¶ 13-18. These twelve (12) incidents are all corroborated by Defendants collection notes. Court Doc. 44, Vavreck Decl., ¶2, Ex. 2, Harris Collection Notes. The complaint also alleges that Defendant made additional calls and left additional messages violating the TCPA. Court Doc. 1, Complaint ¶ 19. Defendant's collection notes corroborate that additional calls occurred. Court Doc. 44, Vavreck Decl., ¶2, Ex. 2, Harris Collection Notes. While Plaintiff only asserted 159 calls in violation of the TCPA, Defendant concedes that its ATDS attempted 163 calls to Plaintiff. Court Doc. 47, DPFF 3. Plaintiff has no dispute with Defendant's larger figure. Defendant argues, however, that only 133 actual calls occurred because some call attempts were not connected. Court Doc. 47, DPFF 2. Regarding calls, therefore, the Court need only determine whether the TCPA prohibits the *instances* an ATDS is used or prohibits the calls *completed* by an ATDS.

As to the issue of voicemails violating the TCPA, the parties agree that Defendant left 46 messages. *Id.* at 3-4. Assuming the Court finds Defendant liable for violating the TCPA, therefore, Defendant is either liable for 163 calls and 46 messages (209 violations), or Defendant is liable for 133 calls and 46 messages (179 violations).

### b. Defendant has Not Raised a Genuine Issue of Fact Regarding Prior Express Consent.

Defendant is also incorrect in its argument that summary judgment should be denied due to there being a genuine issue of material fact regarding whether Plaintiff provided his cell phone number to We Energies. Defendant argues "that fact is disputed

23

23

23

by We Energies account information." Court Doc. 49, Def Memo 22. The "We Energies account information" is not in the record. The only source Defendant points to for the argument that Plaintiff gave his cell phone number to We Energies is the Brown Affidavit which, as explained in Section II., *supra*, is inadmissible hearsay that cannot be used in summary judgment proceedings. The record, therefore, does not contain a genuine issue of fact with respect to Plaintiff's provision of his cell phone number to We Energies. The record supports finding that Defendant did not have Plaintiff's consent to call using an ATDS.

### c. The Meaning of Plaintiff's Request for an Injunction is Clear

Defendant is incorrect to argue that it is not clear what Plaintiff means by seeking an injunction against Defendant. The meaning is abundantly clear. Plaintiff argues that Defendant violated the TCPA by using an ATDS and prerecorded/artificial voice to place calls to Plaintiff. The TCPA authorizes the award of an injunction against conduct that violates the TCPA. 47 U.S.C. § 227. Plaintiff seeks an Order from the Court enjoining Defendant from using an ATDS and prerecorded/artificial voice to place calls (absent prior express consent), now until the end of time.

### d. The TCPA Precludes Defendant from Equitable Defenses.

Defendant's unclean hands and equitable estoppel defenses have no relevance to this matter. The TCPA is a strict liability statute. Like other such statutes, Defendant cannot evade liability absent a defense enumerated in the statute. *Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188, 1201 (E.D. Cal. 2009) ("The three statutory defenses

24

enumerated in [CERCLA] are "the only [defenses] available, and . . . the traditional equitable defenses are not."); *Purtle v. Eldridge Auto Sales, Inc*., 91 F.3d 797, 801 (6th Cir. 1996) (A court finding a violation of TILA, no matter how technical, has no discretion with respect to liability); *Town of Munster, Indiana v. Sherwin-Williams Co.*, 27 F.3d 1268, 1272 (7th Cir. 1994) (holding that, in enacting CERCLA, Congress exercised its power "to restrict the district courts' equity jurisdiction"). By the express terms of the TCPA, Defendant has exactly two (2) defenses available to it: either it must have prior express consent or it must be making a call with an emergency purpose. 47 U.S.C. §227(b)(1) ("It shall be unlawful for any person . . .to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. . . ."). Defendant is precluded from any other defense. The facts of this case limit Defendant to one defense – Prior Express Consent. The record does not support finding Prior Express Consent. Defendant is therefore liable to Plaintiff.

## V. Defendant's Exhibits C, D, E, and F are Irrelevant and More Prejudicial than Probative.

### a. Exhibits C, D, and E Do Not Contain Relevant Evidence.

Evidence must be relevant to be admissible. Fed.R.Ev. 401. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is or consequence in determining the action. *Id*. Inadmissible evidence may not be used in summary judgment proceedings. *Boyce*, 314 F.3d at 889; *Eisenstadt,* 113 F.3d at 742.

25

Defendant was not involved in the matters described in Exhibits C, D, and E of Defendant's Response to Plaintiff's Proposed Findings of Fact and Additional Proposed Findings of Fact and Conclusions of Law. Until Defendant places something admissible into the record which tends to support a finding that Prior Express Consent exists, there is absolutely no reason to allow evidence seeking to discredit Plaintiff's veracity. These Exhibits are not relevant because Defendant's attempted proof of Prior Express Consent, the Brown Affidavit, is inadmissible and so cannot be considered in these summary judgment proceedings.

   **b. Assuming the Court Deems Exhibits C, D, and E to be Relevant, the Exhibits are More Prejudicial than Probative.**

   Once a certain piece of evidence has been established as relevant, the Court still has broad discretion in determining whether its probative value outweighs possible prejudice. *See In re Air Crash Disaster Near Chicago*, 803 F.2d 304, 308-09 (7th Cir. 1986) (finding admissibility is governed by FRE 403 and the trial court's exercise of its broad discretion will be accorded great deference); *West v. Love*, 776 F.2d 170, 174 (7th Cir. 1985). "Evidence is unfairly prejudicial if it creates 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Sherrod v. Berry*, 856 F.2d 802, 814 (7th Cir. Ill. 1988) (citing Fed.R.403, advisory committee notes). Exhibits C, D, and E are unquestionably prejudicial, confuse the issues, would mislead a jury, and needless present cumulative evidence. Defendant introduces Exhibits C, D, and E only to use excerpts to paint Plaintiff as "a modern day Uriah Heep." Regardless of Defendant's opinion of Plaintiff, the TCPA is a strict liability

statute that only asks whether calls occurred, whether those calls were made by an ATDS, and whether Defendant can prove it has Prior Express Consent. The character of the Plaintiff is irrelevant to the TCPA: it protects Uriah Heep as surely as it protects David Copperfield, Tommy Traddles, Betsey Trotwood, and Edward Murdstone. None of the exhibits produced by Defendant contain anything that directly impacts the present matter, but instead risk predisposing a jury against Plaintiff rather than allow a decision on the law. The exhibits accomplish nothing productive; if the Court finds that Defendant proved consent, the case is over. If the Court finds that Plaintiff has brought evidence that raises an issue of fact with respect to consent, the Court can determine whether that evidence raises a genuine issue of material fact without Exhibits C, D, and E.

### c. Exhibit F Violates the Federal Rules' Exclusion of Settlement Evidence.

Exhibit F is comprised of Plaintiff's attempts to settle his claims against Defendant. Offers to settle as well as conduct and statements occurring in the course of settlement negotiations are inadmissible evidence. Fed.R.Ev. 408. Plaintiff recognizes that settlement negotiations may be offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. *Id*. However, the "risks of prejudice and confusion entailed in receiving settlement evidence are such that often Rule 403 and the underlying policy of Rule 408 [to encourage settlement] require exclusion even when a permissible purpose can be discerned." *Stacey v. Bangor Punta Corp.*, 620 F. Supp. 636, 637 (D. Me. 1985); *accord Weir v. Federal Ins. Co.*, 811 F.2d 1387, 1395 (10th Cir.

1987).

The emails contained in Exhibit F are clearly marked as offers to compromise and contain citations to the Fed.R.Ev. 408, as well as the Wisconsin Evidence Code. Defendant only offers Exhibit F in an attempt to prove that Plaintiff sent emails threatening to file a lawsuit. That fact has no consequence: Plaintiff perceived violations of his legal rights, gave an opportunity to resolve those perceived violations absent litigation, did not receive an amicable solution, and decided to exercise his legal rights in court. Defendant is effectively trying to paint Plaintiff as an extortionist when the fact is that Congress secured rights for consumers and a means for consumers to vindicate those rights. The record establishes the claim has merit. Neither bias nor prejudice can be drawn from Exhibit F; pursuant to the plain language of the Federal Rule of Evidence 408, the entire contents of Exhibit F are inadmissible evidence and should be struck from the record.

## **CONCLUSION**

Plaintiff has established liability. Defendant has not established an affirmative defense to that liability. For the reasons stated herein, Plaintiff respectfully requests the Court issue an Order denying Summary Judgment in favor of Defendant and awarding Summary Judgment in favor of Plaintiff.

28

Dated: April 7, 2014    Respectfully Submitted,

**MARTINEAU, GONKO & VAVRECK, PLLC**

By: <u>Mark L. Vavreck, Esq.</u>
Attorney I.D. #318619
Designers Guild Building
401 North Third Street, Suite 600
Minneapolis, MN 55401
Telephone: 612-659-9500
Facsimile: 612-659-9220
mvavreck@mgvlawfirm.com

*ATTORNEY FOR PLAINTIFF*